# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

LINETTE FISHER,                    )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )    Civ. No. 10-740-SLR
                                   )
AETNA LIFE INSURANCE COMPANY,      )
                                   )
        Defendant.                 )

Joseph J. Rhoades, Esquire of Law Office of Joseph Rhoades, Esq., Wilmington, Delaware. Stephen T. Morrow, Esquire of Law Office of Joseph Rhoades, Esq., Wilmington, Delaware. Counsel for Plaintiff.

Herbert Weiswasser Mondros, Esquire of Margolis Edlestein, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Michael P. Cunningham, Esquire of Funk & Bulton, P.A.

## MEMORANDUM OPINION

Dated: March 30, 2012
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On August 30, 2010, Linette Fisher ("Fisher") filed this action against Aetna Life Insurance Company ("Aetna") pursuant to the Employment and Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B) and § 502(a)(3), 29 U.S.C. § 1132. (D.I. 1) Aetna is a third-party claim administrator to Bank of America's Short Term Disability ("STD") plan. (*Id.*) Bank of America is Fisher's employer. Plaintiff claims that she was unlawfully denied benefits under the STD plan. (*Id.*) Fisher asserts that denial of those benefits was arbitrary. (*Id.* at 4) Count I of Fisher's complaint seeks declaratory relief of disability benefits plus interest, attorney fees, and costs pursuant to 29 U.S.C. § 1132(a) or, in the alternative, requiring the defendant to consider all evidence and its impact on Fisher. (*Id.* at ¶¶ 27-29) On October 4, 2010, Aetna motioned to dismiss count II of the complaint because 29 U.S.C. § 1132(a)(1)(B) does not permit a plaintiff to assert a breach of fiduciary duty and because 29 U.S.C. § 1132(a)(3) does not permit a plaintiff to assert a breach of fiduciary duty when an adequate remedy is available under 29 U.S.C. § 1132(a)(1)(B). (D.I. 7) On August 24, 2010, both parties stipulated to dismiss count II of the complaint without prejudice. (D.I. 9) Currently before the court are Fisher and Aetna's cross motions for summary judgment as to count I of the complaint. (D.I. 18; D.I. 23)

The court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). For the reasons set forth below, the court: (1) grants Fisher's motion for summary judgment; (2) denies Aetna's motion for summary judgment; and (3) remands the decision to the claim administrator to make a claim determination consistent with this opinion.

## II. BACKGROUND

### A. Plan Details

Bank of America, Fisher's employer, delegated authority to Aetna to act as the fiduciary to the plan "for purpose[s] of [1] reviewing denied claims under the Plan . . . [2] hav[ing] discretionary authority to determine entitlement to Plan benefits . . . and [3] constru[ing] the terms of the Plan." (D.I. 20, ex. A at 29) Aetna "is acting solely as third party claim administrator and shall not be designated or deemed the Plan administrator, Plan sponsor, or the employer under the plan." (*Id.* at 46) Therefore, while the plan is paid for by Bank of America, eligibility decisions are made by Aetna. (*Id.*)

To qualify for short term disability benefits under Bank of America's STD plan, an associate must be considered "disabled" under the plan. (D.I. 19, ex. B at 631) To be disabled, an associate must have the "inability to perform his or her essential occupation functions for more than seven consecutive calendar days because of a pregnancy, illness, injury, non-elective surgery or hospitalization." (*Id.*) STD coverage is available to a full or part time associate with a minimum of one year of continuous service who has been disabled for more than seven consecutive days. (*Id.*) To maintain STD coverage, continuous care by a physician, nurse practitioner, or the like, must be established. (*Id.*) STD benefits do not cover associates when "the associate fails to have a physical examination and/or provide satisfactory objective medical evidence of disability or continuing disability or other information requested by the Claim Administrator." (*Id.* at 633) STD benefits end when, inter alia: (1) "an associate is no longer considered disabled by his or her treating medical provider and/or the claims

2

administrator;" (2) "an associate is capable of performing the essential functions of his or her occupation;" or (3) "an associate fails to have a physical examination and/or provide satisfactory objective medical documentation of continuing the disability when requested by the Claims Administrator." (*Id.*)

If coverage is denied, a claimant maintains the right to appeal that decision. (*Id.* at 301) In addition to rights under ERSIA, the plan allows the company to obtain a second opinion at its expense. (D.I. 28, ex. E at 238) Furthermore, "[i]f necessary to resolve a conflict between the original certification and the second opinion, the company may require the opinion of a third health care provider. [Claimant] and the company jointly select the third health care provider, and the company pays for the provider. This third opinion is considered final." (*Id.*)

## B. Factual and Medical History

For fourteen years, Fisher worked as a Credit Card Analyst for Bank of America. (D.I. 24, ex. A at AR 86) In that capacity, Fisher "analyze[d] credit information" and "prepare[d] report[s] of findings." (*Id.*) Her work was mostly sedentary. (*Id.*)

On April 17, 2009, Fisher did not come to work and timely filed for STD, Family Medical Leave Act ("FMLA") and Bank of America Medical Leave ("BACMED") benefits. (D.I. 21 at 8, 80, 81) That same day, Aetna acknowledged receipt of Fisher's STD claim and requested Fisher return an Authorization for Release of Medical Information form. (*Id.* at 8) Fisher signed and returned the authorization on April 24, 2009. (*Id.* at 12)

On May 1, 2009, Aetna denied Fisher's STD benefits because "on 4/17/09, 4/21/09, and 5/1/09 [Aetna] contacted [Fisher's] provider Dr. Townsend by phone and

3

fax" and had not received any "specific clinical information that indicates specifically why [Fisher is] unable to perform the core elements of [her] own occupation . . . ." (*Id.* at 14) Fisher timely filed an appeal request letter on May 7, 2009. (*Id.* at 17) In her letter, Fisher explained that her physician will be faxing the completed forms on Friday, May 8[1] and that Fisher will follow up on Monday, May 11. (*Id.* at 17)

On May 7, 2009 Fisher underwent an MRI of the brain without contrast under the direction of Alexander Mark, M.D. ("Dr. Mark") of Papastavros Associates. (*Id.* at 19) Dr. Mark stated that his impression was "no intracranial abnormality, [n]o findings to explain the patient's neurological symptoms." (*Id.*)

On May 12, 2009, Neurology Associates, P.A., the office of Fisher's treating physician, John B. Townsend, III, M.D. ("Dr. Townsend"), faxed the Attending Physician Statement ("APS")[2] to Aetna. (D.I. 21 at 22) The APS was completed by Susan Townsend, M.S. A.P.N. ("Nurse Townsend"). (*Id.*) The APS noted that Fisher's diagnosis was migraine headaches. (*Id.*) Nurse Townsend stated that Fisher had no ability to work, but could complete activities of daily living and drive a car for short distances. (*Id.* at 23) Nurse Townsend noted that the restrictions would remain in effect for an undetermined period of time. (*Id.*) Under "objective findings," Nurse Townsend listed "physical examination and mental status examination." (*Id.*) At that time, Fisher's headaches were treated with the following medications: Topmax, Celexa, and Lorzapam. (*Id.* at 22) On June 1, 2009, Aetna approved Fisher for BACMED and

---

[1]As discussed *infra*, documents were faxed at later dates. (D.I. 21 at 22)

[2]The APS is used to provide medical documentation to substantiate a disability. (D.I. 30, ex. R at 206)

4

FMLA leave. (*Id.* at 152)

Fisher followed up with Neurology Associates on June 2, 2009. (*Id.* at 24) Nurse Townsend noted that Skelaxin effectively reduced pain and that the headaches were caused by stress. (*Id.* at 25) Furthermore, Nurse Townsend noted in the objective evidence that there were no headaches while Fisher was on vacation. (*Id.*) Subjectively, Nurse Townsend stated that the headaches remained unchanged and that Excedrin Migraine relieves some of the symptoms. (*Id.*) At that time, Fisher continued to experience photo and phono sensitivity in addition to mild nausea in the morning. (*Id.*) After Fisher's visit, Nurse Townsend sent a fax to Aetna requesting extension of Fisher's FMLA through July 16, 2009. (*Id.* at 33) Nurse Townsend also sent a Certification of Health Care Provider form to the Department of Labor stating that Fisher is "unable to perform any job related functions . . ." and that it was medically necessary for Fisher to be absent from work during "flare-ups." (*Id.* at 28-30) Nurse Townsend stated that the absence was necessary for "acute, incapacitating migraines, and acute episodes of anxiety if they arise." (*Id.* at 30) Nurse Townsend noted that the flare-ups would occur once every two months and last for approximately one to two days. (*Id.*) Furthermore, Nurse Townsend noted that ". . . [Fisher's] headaches increased in frequency, intensity, and duration." (*Id.*)

Fisher also underwent further testing by way of a brain MRA without contrast on June 2, 2009, with Dr. Mark. (*Id.* at 34) Dr. Mark again stated there were "no findings to explain the patient's neurological symptoms." (*Id.*)

Nurse Townsend completed and sent a second APS to Aetna on June 6, 2009. (*Id.* at 35-36) Nurse Townsend declared that Fisher had no ability to work. (*Id.* at 36)

Fisher's limitations were undetermined and Fisher's return date was undetermined. (*Id.*) Under objective evidence, Nurse Townsend listed the MRI, MRA, physical and mental exam, Patient Health Questionnaire 9 ("PHQ 9")[3], and Mood Disorder Questionnaire ("MDQ").[4] (*Id.*) No results for the PHQ 9 or MDQ are in the record at bar.

On June 8, 2009, Fisher called Aetna to discuss the May 1, 2009 denial of benefits. (*Id.* at 98) Fisher told Adrienne Bowman ("Bowman"), an employee of Aetna, that she sent an appeal letter, but Bowman could not find it. (D.I. 21 at 98) Bowman further explained that Fisher was originally denied because "insuff[icient] objective documentation was rec[eived] to support her being [out of work]." (*Id.*) Bowman stated "that it will be difficult to approve 7.4 [weeks out of work due to headaches]." (*Id.*)

Sandy Fruits ("Fruits"), an employee of Aetna, notified Fisher of Aetna's receipt of the STD appeal request letter on June 25, 2009. (*Id.* at 39) The letter, stating that the appeal request was received on June 22, 2009, further noted that Fisher will hear a response within 45 days of the receipt of the appeal request. (D.I. 21 at 39)

Fisher visited Neurology Associates again on July 2, 2009. (*Id.* at 40) Fisher's medications at that point included: HCTZ, Celexa, Topamax, Lorazepam, Maxalt, Skelaxin, and Zyrtec. (*Id.*) Subjective notes from the visit include possible improvement of headaches with Topamax and two different types of headaches occurring (muscle tension and migraines). (*Id.*) Furthermore, "[h]er daily headaches

_____

[3]PHQ-9 is a questionnaire used to diagnose depression. (D.I. 28 at 18)

[4]The MDQ is used to diagnose bipolar disorder. (D.I. 28 at 18)

involve the bilateral temples, pulsates, constant, with a hat band [d]istribution, constant, [relieved] with Excedrin Migraine." (*Id.* at 41) Fisher still reported nausea in the morning, photo and phono sensitivity. (*Id.*) Objective notes were all "normal." (*Id.*) Dr. Townsend increased Fisher's Topamax prescription for migraine headaches and gave a prescription of Amrix and Skelaxin for the muscle tension headaches. (*Id.*)

On July 10, 2009, Fisher again authorized the release of all of her medical records, without limitations, to Aetna with attention to Lauren Milligan of the Centralized Appeal Unit. (*Id.* at 43) On July 22, 2009, Ms. Milligan sent a letter to Fisher informing her that Aetna has "determined that [Fisher has] complied with [Aetna's] request for medical documentation . . . . Therefore, the original decision to deny [Fisher's] STD benefits has been overturned, effective [April 17, 2009]." (*Id.* at 44) The claim was sent to the Operations Unit for further review based on all the documentation Fisher had subsequently provided. (*Id.*)

Fisher was seen by Dr. Townsend again on August 11, 2009. (*Id.* at 50) Fisher reported that the Topamax may have improved the headaches, but she experienced "squiggly lines in her vision in the evening." (*Id.* at 51) Fisher also reported that she had not had a "true migraine" since her last visit, but will "go to bed and will wake up again at 3:00 and has trouble getting down to sleep." (*Id.*) Dr. Townsend's objective notes indicate that Fisher was normal. (*Id.*) Dr. Townsend decreased the Topamax to reduce the side effects of the medication. (*Id.* at 52) Dr. Townsend asked Fisher to return in 12 weeks. (*Id.*) On September 1, 2009, Dr. Townsend's office faxed a note to Aetna dated July 2, 2009 stating that Fisher's disability must extend through at least August 11, 2009. (*Id.* at 56)

7

On September 2, 2009, Aetna denied Fisher's May 7, 2009 appeal for STD
benefits because the "information [was] insufficient to warrant a reversal of [her]
disability claim decision at this level" (*id.* at 57); specifically, Fisher had not stated the
reason she was unable to perform her job duties and all tests returned normal. (*Id.*)
Aetna informed Fisher of her right to appeal the decision within 180 days following the
receipt of the denial. (*Id.*)

On September 21, 2009, Fisher returned to work. (D.I. 1 at ¶ 21) On November
13, 2009, Fisher's attorney wrote to Aetna to state Fisher's intent to appeal the
decision. (D.I. 21 at 59) On November 25, 2009, Fruits, writing for Beverly Smart of
Aetna, replied confirming receipt of the appeal request. (*Id.* at 61) Aetna stated that
Fisher would receive a written notification of the decision within 45 days unless Aetna
needed an additional 45 days, in which case Fisher would be notified of the need for an
extension. (*Id.*) On December 31, 2009, Fisher received a notice from Marie Cenatus
("Cenatus"), an Appeal Specialist at Aetna, that Aetna would need more time than the
initial 45 days because Aetna arranged for two physicians to review Fisher's medical
information. (*Id.* at 68)

Dr. Steve Swersie ("Dr. Swersie"), an internal medicine specialist reviewing on
behalf of Aetna, examined Fisher's claim on December 22, 2009. (*Id.* at 64) Dr.
Swersie reviewed all records, including Dr. and Nurse Townsend's notes, and
determined that the information "fails to support functional impairment for the entire
time frame." (*Id.* at 66) Dr. Swersie noted that "claimant continued to have some
symptoms during the period in question. However, there is no documentation that
these symptoms were of a severity to impair her ability to perform her usual activities of

8

daily living or of her occupation." (Id.) He found that the "restrictions recommending the claimant be not fit for employment after [April 17, 2009] do not appear to be appropriate." (Id.)

Dr. Vaughn Cohan ("Dr. Cohan"), a neurologist reviewing on behalf of Aetna, examined Fisher's claim on December 24, 2009. (Id. at 73) Dr. Cohan noted that "[n]one of the documentation describes the claimant as having headaches of sufficient severity and/or intensity as to preclude performance of normal activities of daily living including work-related activities." (Id.) Dr. Cohan found that, even though Dr. and Nurse Townsend support Fisher's absence from work, in his opinion "the documentation which they provide does not substantiate a level of impairment which would justify the claimant's continued absences from work." (Id.) Dr. Cohan believed that the documentation did not provide "objective evidence of a functional impairment." (Id. at 74)

Dr. Cohan also reached out to Dr. Townsend to get more clinical information prior to making his peer review determination. (Id. at 73) Dr. Cohan states that he attempted to contact Dr. Townsend and left messages with his office staff on January 4, 2010; January 5, 2010; and January 6, 2010. (Id.) Dr. Cohan did not receive a return phone call by the end of the day on January 6, 2010. (Id.)

Aetna faxed Dr. Townsend the reports of Drs. Swersie and Cohan for his review and comment and requested a response by January 21, 2010. (Id. at 133) Aetna did not receive a response from Dr. Townsend. (Id. at 134)

On February 12, 2010, Cenatus notified Fisher through her attorney that the denial of STD benefits was affirmed. (Id. at 76-77) Cenatus cited to "a lack of medical

9

evidence to support [Fisher's] inability to perform the essential functions of her occupation." (*Id.* at 77) Aetna noted Fisher's right to bring a civil action within the year if she disagrees with the opinion. (*Id.*)

## III. STANDARD OF REVIEW

### A. Summary Judgment Standard

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are material, and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See*

10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B. ERISA Standard of Review

ERISA allows a beneficiary to bring a civil action against an administrator or fiduciary to recover benefits due under the terms of a benefit plan. *See* 29 U.S.C. § 1132(a)(1)(B).[5] Courts should review a denial of insurance benefits "under a *de novo* standard" unless the plan grants discretionary authority. *Metropolitan Life Ins. Co. Glenn*, 554 U.S. 105, 111 (2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). If a plan grants discretionary authority to an administrator or fiduciary, a court must apply the arbitrary and capricious standard when reviewing administrative decisions. *See id.* Under this standard, the plaintiff has the burden of showing that the administrator's denial of benefits was "without reason, unsupported by substantial evidence or erroneous as a matter of law" using the evidence available to the administrator at the time of the decision. *Johnson v. UMWA Health & Ret. Funds*, 125 F. App'x 400, 405 (3d Cir. 2005) ("This Court has made clear that the record for arbitrary and capricious review of ERISA benefits denial is the record made before the plan administrator which cannot be supplemented during litigation."). "A decision is supported by substantial evidence if there is sufficient evidence for a reasonable person

---

[5] The statute states: "A civil action may be brought – (1) by a participant or beneficiary - . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

11

to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000) (citation omitted). Thus, when the plaintiff disputes benefit denial under ERISA where a plan grants discretionary authority, the court's task is to determine "whether or not, based on the undisputed administrative record, [the administrator's] decision was an abuse of discretion." *Malin v. Metropolitan Life Ins. Co.*, No. 10-0661 (JBS/AMD), 2012 WL 603676, at \*5 (D. Del. February 22, 2012) (quoting *Kao v. Aetna Life Ins. Co.*, 647 F. Supp. 2d 397, 409 (D.N.J. 2009)); *see also Marciniak v. Prudential Fin. Ins. Co. Of Am.*, 184 F. App'x 266, 270 (3d Cir. 2006).

## IV. DISCUSSION

In this case, the parties are in agreement regarding the discretionary authority granted to Aetna in determining claim eligibility. (D.I. 20, ex. A at 29; D.I. 19 at 1; D.I. 24 at 4) Because of that authority, the court must review Aetna's decision to deny benefits under the arbitrary and capricious standard using only the evidence available to Aetna at the time of the decision. *See Glenn*, 554 U.S. at 111. Fisher identifies four reasons why summary judgment is appropriate under the arbitrary and capricious standard: (1) Aetna determined that Fisher was disabled from work for purposes of receiving unpaid benefits under FMLA and BACMED; (2) Aetna did not consider the effects of all of Fisher's conditions on her ability to work; (3) Aetna imposed an objective disability requirement which was impossible for Fisher to meet; and (4) Aetna credited consultant medical opinion over the opinion of Fisher's treating physician. (D.I. 29 at 7-10)

### A. FMLA and BACMED Benefits

Inconsistent decisions in awarding benefits can be a factor in determining

12

whether a decision is arbitrary and capricious. *See Glenn*, 554 U.S. at 118-19. In *Glenn*, the court reviewed a denial of benefits claim where the participant was encouraged to apply for, and was subsequently awarded, benefits by the Social Security Administration ("SSA"). *Id.* at 118. The court took issue with the plan administrator's finding that the participant was capable of doing sedentary work – the type of work the participant was found incapable of performing by the Social Security Administration – particularly in light of the fact that the administrator's inconsistent decisions were both financially beneficial to the administrator. *See id. Glenn* "did not, however, hold that a plan administrator must always reconcile its determinations with those of the SSA." *Goletz v. Prudential Ins. Co. Of America*, 383 Fed. Appx. 193, 198 (3d Cir. 2010). Instead, the inconsistency of outcome should be a factor in determining arbitrary and capricious conduct. *Id.*

Here, Fisher was granted both FMLA and BACMED benefits. FMLA benefits are awarded based solely on information provided in a certification form, filed by an appropriate health care provider. *See* 29 C.F.R. § 825.306(b). The certification is sufficient if it contains the following: "(1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; [ . . . and] (4)(B) for purposes of leave under § 2612(a)(1)(D) of this title, a statement that the employee is unable to perform the functions of the position of the employee . . . ." *See* 29 U.S.C. § 2613. Under FMLA regulations, Aetna can only ask for information

13

contained within the certification form. 29 C.F.R. § 825.306(b).[6]

The certification form submitted by Fisher's treating physician includes the following: (1) the beginning date of the period of "incapacitation" (April 16, 2009); (2) an estimated ending date for the period of "incapacitation" (estimated July 16, 2009); (3) factual reasons behind the "incapacitation" (acute, incapacitating migraines and acute episodes of anxiety); and (4) a statement that Fisher is "unable to perform any job related functions [at] this time." (D.I. 21 at 29-30) Aetna approved FMLA leave upon receipt of the form. (*Id.* at 156) Because of the low evidentiary requirement, granting FMLA and denying STD benefits is reconcilable.

BACMED is intended to provide for "associates who do not meet the eligibility requirements for [STD] benefits." (*Id.* at 145) Based on the stated purpose behind BACMED, the court fails to see an inconsistency in granting BACMED and denying STD benefits.

STD benefits are granted when an associate is disabled under the plan. (D.I. 19, ex. B at 631) To be disabled, an associate must have the "inability to perform his or her essential occupation functions for more than seven consecutive calendar days because of a pregnancy, illness, injury, non-elective surgery or hospitalization." (*Id.*) As the STD benefits plan requires physical examination and/or objective medical evidence (*see supra* p. 2-3) – a requirement found under neither FMLA nor BACMED – the decision to deny STD benefits while awarding FMLA and BACMED benefits is not

_____

[6]For non-FMLA-related plans, an employer is entitled to ask for additional information that goes beyond the requirements under FMLA. 29 C.F.R. § 825.306(c). If an employee fails to provide the evidence required under a non-FMLA-related plan, the employer cannot end "unpaid FMLA leave." *Id.*

14

arbitrary and capricious.

## B. All Relevant Diagnoses

The Third Circuit has explained that "an administrator's failure to address all relevant diagnoses in terminating a claimant's benefits is [a] cause for concern that suggests the decision may have been arbitrary and capricious." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 853 (3d Cir. 2011). In *Miller*, the Court looked to the failure of the administrator to mention either of the diagnoses in the denial letter and the failure of the reviewing physicians to recognize one of the two diagnoses in the physician report. *Id.* at 853. The omission of this information indicated that the decision may be arbitrary and capricious. *Id.* at 854.

Here, Fisher was diagnosed with two types of headaches, migraine headaches and muscle tension headaches. (D.I. 24 at 10-11) Fisher argues that the record shows no evidence that Aetna "adequately considered the impact of muscle tension headaches alone on [Fisher's] ability to work." (*Id.* at 11) Fisher supports this assertion by noting that Dr. Cohan, Aetna's neurologist, only sought objective evidence associated with migraines, not muscle tension headaches. (*Id.*) The court disagrees. A comprehensive review of the record makes it clear that Drs. Cohan and Swersie noted the existence of the separate diagnoses and considered both in their opinions. (D.I. 21 at 65, 73) Dr. Swersie stated that "symptoms increased due to stress at work resulting in daily muscle tension headaches" and that Fisher's primary diagnosis was "migraine headache with aura." (*Id.* at 65) Dr. Cohan found that "[m]edical records from Dr. Townsend and from his nurse practitioner describe the claimant as having chronic recurring migraine and muscle tension-related headaches." (*Id.* at 73) As

15

evidenced by her final denial letter, the administrator considered the opinions of Drs. Swersie and Cohan and noted the existence of both diagnoses in coming to her ultimate conclusion. (*Id.* at 76-77) Accordingly, the court finds that Aetna sufficiently considered Fisher's muscle tension headaches.

## C. Requirement for Objective Evidence

A plan administrator's "demand [for] tests to establish the existence of a condition for which there are no objective tests" has been found to be arbitrary and capricious. *Salomaa v. Honda Long Term Disability Plan*, 642 F. 3d 666, 679 (9th Cir. 2011) ("[C]onditioning an award on the existence of evidence that cannot exist is arbitrary and capricious."). The Third Circuit has explicitly concluded that requiring objective medical evidence is arbitrary and capricious when a claim for long-term disability benefits is a result of chronic fatigue syndrome or fibromyalgia diagnoses. *See Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 442-43 (3d Cir. 1997) (abrogation on other grounds recognized in *Miller*, 632 F.3d at 847; *see also Steele v. Boeing Co.*, 225 Fed. Appx. 71, 74-75 (3d Cir. 2007) (finding that it was impermissible to require objective evidence for fibromyalgia, a condition based on subjective complaints of pain and that cannot be proven objectively, and that the effect of such requirement would be to eliminate arbitrarily and capriciously all disability claims based on fibromyalgia); *Kuhn v. Prudential Ins. Co. of Am.*, 551 F. Supp. 2d 413, 427 (E.D. Pa. 2008) ("chronic fatigue syndrome cases are analogous to the situation presented by fibromyalgia cases").

Here, Fisher argues that chronic muscle tension headaches can occur without objective medical evidence, similar to fibromyalgia and chronic fatigue syndrome. (D.I.

16

29) Thus, Fisher believes that Aetna knew or should have known that objective evidence would be impossible to procure, making the objective evidence requirement arbitrary and capricious under these facts. (*Id.*)

Aetna argues that, because the plan states objective evidence is needed for a claim, plaintiff's failure to show sufficient objective evidence is reason enough to deny her request. (D.I. 28 at 15) Moreover, Aetna believes that, regardless of Fisher's assertion that her headaches are "exclusively characterized by subjective complaints," Dr. Townsend made objective findings and, therefore, Fisher's disability can be characterized by more than subjective evidence. (D.I. 28 at 17)[7]

The court finds that the objective tests (such as the MRI, mental status, neurological, and physical exams—all reported as "normal") were intended to be as much measures to eliminate other diagnoses, as a means to objectively prove Fisher's migraine and muscle tension headache diagnoses. Furthermore, although the notes written by Dr. and Nurse Townsend describe "objective" evidence, the information outside of testing results was subjective in nature. Regardless of whether Dr. and Nurse Townsend suggest objective evidence existed, only subjective evidence existed with respect to Fisher's headaches. Accordingly, the court must decide whether requiring objective evidence was arbitrary and capricious with respect to the headaches experienced by Fisher.

While employers are granted "large leeway to design disability and other welfare plans as they see fit," *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833

---

[7]*See supra* p. 4, 5 (explaining that Dr. and Nurse Townsend provided notes including "objective evidence").

17

(2003), requiring objective evidence where none may be available, such as the case with fibromylagia, chronic fatigue syndrome, migraines and muscle tension headaches, is arbitrary and capricious. *See supra* p. 16-17; *see also Hewett v. Astrue*, 408-CV-00554-MP-WCS, 2010 WL 940982, at *10 (N.D. Fla. Mar. 12, 2010) ("[T]here are some conditions, such as migraine headaches, that cannot be diagnosed or confirmed through laboratory or diagnostic testing."); *Diaz v. Barnhart,* No. CIV.A.01-CV-0525, 2002 WL 32345945, *6 (E.D. Pa. Mar 07, 2002) ("Migraine headaches . . . do not stem from a physical or chemical abnormality which can be detected by imaging techniques or laboratory tests, but are linked to disturbances in cranial blood flow.") (internal citation omitted).[8]

In rejecting Fisher's claim, Aetna cited to "a lack of medical evidence to support [Fisher's] inability to perform the essential functions of her occupation." (D.I. 21 at 77) To the extent that Aetna's denial of STD benefits was based on a lack of objective medical evidence to substantiate plaintiff's subjective complaint of headaches, such determination is arbitrary and capricious.[9]

### D. Physician Opinions

In ERISA claim denials, plan administrators do not need to afford deference to treating physicians. *Nord*, 538 U.S. at 834; *see also Morningred v. Delta Family Care &*

---

[8]The court is permitted to obtain guidance from precedent in social security decisions. *Marshall v. Prudential Health Care Plan*, No. Civ. A. 01-331 GMS, 2002 WL 1284947, at *10 (D. Del. June 10, 2002) (citing *Torix v. Ball Corp.*, 862 F.2d 1428, 1431 (10th Cir. 1988)).

[9]Aetna could have relied on other evidence – such as evidence of daily activities – as non-medical evidence for purposes of a benefits denial.

Survivorship Plan, 790 F. Supp. 2d 177, 185 (D. Del. 2011). In Morningred, the court found that, "in the presence of conflicting medical opinions proffering varying causes of [plaintiff's] disability and her ability to return to work, the Plan granted [defendant] complete discretion to weigh conflicting evidence and render a decision." Id. at 186. Therefore, awarding more credit to certain medical evidence over contrary medical evidence is not evidence of abuse of discretion. Id. Conversely, "[p]lan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Id. at 834. In short, plan administrators must demonstrate that they are not acting arbitrarily when they choose to credit some evidence over other evidence. Mitchell, 2011 WL 1284947, at *9. Finally, unless specified in the plan administration agreement, "the decision to rely upon written submissions, rather than ordering an independent medical examination, fails to render a plan administrator's decision arbitrary and capricious." Marshall v. Connecticut General Life Ins. Co., No. Civ. A.2:02 CIV 03662, 2005 WL 1463472, at *10 (E.D. Pa. June 17, 2005).

Fisher contends that Aetna's reviewing physicians failed to take Fisher's treating physician's observations into account and, therefore, Aetna's reliance on their reports is arbitrary and capricious. (D.I. 29 at 11) Specifically, Fisher claims that the consulting physicians disregarded her treating physician's opinion by: (1) not speaking with or examining Fisher directly regarding her subjective complaints; and (2) not considering the diagnosis in conjunction with Fisher's job requirements. (Id.)

Aetna argues that both Drs. Cohan and Swersie took Dr. Townsend's opinion under consideration and that crediting the opinions of two peer physicians over the

19

opinion of Fisher's physicians was not arbitrary and capricious. (D.I. 19 at 16) Dr.

Cohan, Aetna's reviewing neurologist, specifically stated in the administrative record

that "[a]lthough Dr. Townsend and his nurse practitioner have supported the claimant's

absences from work, nevertheless it is my opinion that the documentation which they

provide does not substantiate a level of impairment which would justify the claimant's

continued absences from work." (D.I. 21 at 73) As to the specific aspects of Fisher's

job, Dr. Cohan stated he reviewed all records submitted for his review, including the

"Job Description for a Credit Analyst." (*Id.* at 72-73) Upon finding that Fisher failed to

support her disability claim, Dr. Cohan stated that "there [was] no demonstration of a

degree of intensity and/or severity as to preclude work or other normal activities of daily

living . . . . [T]he documentation provided does not demonstrate objective evidence of a

functional impairment for the claimant's own occupation . . . ." (*Id.* at 74) Dr. Cohan

also attempted to reach out to Dr. Townsend three times (January 1, 2010; January 5,

2010; and January 6, 2010) to discuss the diagnoses and heard no response. (*Id.*) Dr.

Swersie similarly cited to Dr. and Nurse Townsend's medical notes directly regarding

the diagnoses and recommendations. (*Id.* at 65)

The court holds that Aetna had no obligation to credit the opinion of Dr.

Townsend over the opinions of Drs. Cohan and Swersie.[10] *See Nord*, 538 U.S. at 834.

Additionally, as opposed to Fisher's contentions, the administrative record indicates that

Drs. Cohan and Swersie reviewed all information given to them by Dr. Townsend in light

---

[10]To the extent that Aetna relied on the opinions of consulting physicians
requiring objective evidence where none is feasible, the court has addressed that
argument. *See supra* section IV.C..

of Fisher's work requirements. *See supra* p. 20. Finally, Aetna has no obligation to meet with claimants in person prior to denying a claim – except where the Associate Handbook indicates differently.

Under the same heading, Fisher also points to the Associate Handbook and takes issue with "Aetna's failure to suggest the use of a jointly selected health care practitioner." (D.I. 29 at 11) The handbook states that: "If necessary to resolve a conflict between the original certification and the second opinion, the company **may** require the opinion of a third health care provider. [Claimant] and the company jointly select the third health care provider, and the company pays for the opinion . . . ." (D.I. 30, ex. S at 238) (emphasis added) With this in mind, Fisher argues it was arbitrary and capricious not to request resolution through a mutually-selected third physician. (D.I. 29 at 11) Aetna rebuffs the assertion by claiming the process cited by Fisher only applies to FMLA certification disputes and not to STD plan disputes. (D.I. 28 at 19)

While the court disagrees with Aetna's position,[11] it nevertheless concludes that Aetna's failure to use a mutually-selected third provider was not arbitrary and capricious. The plan does not require it; the plan only states that Aetna may use the option. (D.I. 30, ex. S at 238) The plan also states that the administrator can get a second opinion – which is what Aetna chose to do. (*Id.*; D.I. 21 at 64, 72) Having a second independent evaluation prior to making a final claim determination is not arbitrary and capricious.

## E. Appropriate Remedy

---

[11]In other words, the process for selecting a third physician is appropriate for STD claim appeals.

The court may decide whether to remand its decision to the administrator or directly grant or deny benefits. *See Carney v. Int'l Broth of Elec. Workers Local Union Pension Fund*, 66 F. App'x 381, 386-387 (3d Cir. 2003); *see also Larmanna v. Special Agents Mut. Benefits Ass'n*, 546 F. Supp. 2d 261, 302 (W.D. Pa. 2008); *Sanderson v. Cont'l Cas. Corp.*, C.A.01-606 GMS, 2005 WL 2340741, at *6 (D. Del. Sept. 26, 2005) ("After a court determines that an administrator has acted arbitrarily and capriciously in denying a claim for benefits, the court can either remand the case to the administrator for renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits."). In *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996), the court determined that "remand for reevaluation . . . is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the [p]lan and applied a wrong standard to a benefits determination." In so finding, the court noted that it is not the role of the district court to apply the correct standard, but instead is the role of the administrator. *Id.* (quoting *Henry v. The Home Ins. Co.*, 907 F. Supp. 1392 (C.D. Cal. 1995)).

The court found that Aetna's denial of STD benefits was arbitrary and capricious to the extent that Aetna required objective medical evidence as proof, when plaintiff's condition (headaches) and the severity of such are not normally detectable by objective imaging techniques or laboratory tests. In this regard, however, the court finds that when a plan administrator is faced with the dilemma of judging the existence and severity of a condition based solely on subjective complaints, it is appropriate for the plan administrator to scour a claimant's medical records in order to find some rational

22

explanation linking the claimant's subjective complaints to her inability to perform her work; i.e., something more than a subjective complaint and a conclusory opinion as to disability. Concomitantly, the court would expect the denial of benefits to reflect the same information.

Because it is Aetna's responsibility to apply the correct standard of review to the record at bar, the court remands to give Aetna the opportunity to review the claim consistent with this opinion. The court notes in this regard that the record reflects little more than conclusory statements (perhaps authorized by Dr. Townsend but apparently communicated through Nurse Townsend) that Fisher's subjective complaints of headaches were caused by stress and were so severe as to preclude her from performing any of her occupational functions. If Aetna declines to grant an award of benefits based on this record, it must to so with an explanation focused on Fisher's subjective complaints.

## V. CONCLUSION

For the foregoing reasons, the court grants the summary judgment motion filed by plaintiff and denies the summary judgment motion filed by defendant. The decision to deny benefits is remanded to the claim administrator to make a determination consistent with this opinion. An appropriate order shall issue.